IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CATHRYN J. WRIGHT, as Administratrix ) | |
| of the Estate of DEBORAH ANN FIELDS, ) | |
| deceased, ) | |
|             Plaintiff, ) | |
| ) | |
|             v. ) | Civil Action No.: 2:08cv689-WHA |
| ) | |
| CATHY A. McKENZIE, et al. ) | |
| ) | (WO) |
|             Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case is before the court on Cathy McKenzie ("McKenzie") and Dusty Lee Conner's ("Conner") Partial Motion for Summary Judgment (Doc. # 69), Peacock Timber Company, Inc.'s ("Peacock Timber") Motion for Summary Judgment (Doc. # 70), Peacock Timber's Motion to Strike Affidavit of Kathy Grigsby (Doc. #107), and McKenzie and Conner's Motion to Strike Affidavit of Katheryn M. Grigsby (Doc. #108).

The Plaintiff, Cathryn J. Wright ("Wright"), filed her Complaint in this case on August 21, 2008, bringing claims of negligent/wanton entrustment, negligent/wanton hiring, training and supervision against McKenzie and Peacock Timber (Count IV), and claims of negligence and wantonness against Conner, and against McKenzie, and Peacock Timber, based on respondeat superior (Count V).[1]

On June 1, 2009, Peacock Timber moved for summary judgment on all claims brought

---

[1] Two other defendants, Freightliner LLC, and Peacock Timber Transport, Inc., and claims against them in Counts I, II, and III, have been voluntarily dismissed from the case.

against it. Conner and McKenzie moved for partial summary judgment, seeking dismissal of all the claims contained in Count IV against McKenzie, and Wright's Count V claim of wantonness.

On July 9, 2009, Wright filed her Motion for Leave to File Supplement to Plaintiff's Response to Defendants' Motion for Summary Judgment, which the court granted on July 10, 2009. Wright filed her supplemental oppositions on July 14, 2009, which included an affidavit by Katheryn M. Grigsby.

On July 15, 2009, Wright filed her Motion to Supplement the Witness List, asking that Grigsby be added to the list. On July 17, 2009, Peacock Timber, and McKenzie and Conner filed motions to strike Grigsby's affidavit.

Having considered all of the parties' evidentiary submissions, and briefs, for the reasons to be discussed, the court finds the Defendants' motions to strike are due to be denied as moot. Peacock Timber's Motion for Summary Judgment is due to be granted in part and denied in part, and McKenzie and Conner's Partial Motion for Summary Judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

On December 19, 2007, Conner was operating a Volvo tractor-truck owned by McKenzie Trucking. He was pulling a trailer owned by Peacock Timber that was loaded with pulpwood logs. Conner had picked up the loaded trailer from Peacock Timber late in the day on December

18, 2009, and had driven the load to his home, near Troy, Alabama, which is shared with his mother, Cathy McKenzie, the owner of McKenzie Trucking, and his father.  He left his home at around 6 a.m. on the 19th to deliver the load to International Paper in Prattville, Alabama, north of his home.

Conner pulled away from his home, located on Highway 231, and drove south along the side of the southbound lanes of Highway 231 towards a break in the median, which separated the north and southbound lanes.  Conner waited for the southbound traffic to clear, and then pulled across those lanes into the median.  As he reached the median, Conner saw two vehicles in the northbound lanes driving towards him on Highway 231.  After those vehicles passed Conner, he saw a Freightliner tractor trailer truck approaching from a distance.  Conner says that he believed the Freightliner was in the left lane, and believed that he had time to safely turn into the right lane of Highway 231 northbound.  Conner made a u-turn into the right lane, north.  Once he was established in the right lane, he looked into his side view mirrors and saw the Freightliner was directly behind him in the right lane.  The Freightliner crashed into the back of the trailer, and was consumed in flames.  The driver of the Freightliner, Deborah Ann Fields, died in the accident.

## IV. DISCUSSION

The Defendants have separately moved for summary judgment on each of Wright's remaining counts, Counts IV & V.  The court will discuss the two counts remaining after the dismissal of Freightliner and the arguments raised by each of the Defendants.

**A.    Negligent/Wanton Entrustment, Negligent/ Wanton Hiring, Negligent/Wanton**

**Training, and Negligent/ Wanton Supervision by Peacock Timber and McKenzie (Count IV)**

The Alabama Supreme Court recognizes the torts of negligent/wanton entrustment, negligent/wanton hiring, negligent/wanton supervision, and negligent/wanton training. *See Southland Bank v. A & A Drywall Supply Co., Inc.*, Case No. 1060204, 2008 WL 5195187, *16-18 (Ala. 2008) (negligent training), *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala.2001) (negligent/wanton supervision); *CP & B Enters., Inc. v. Mellert*, 762 So.2d 356 (Ala.2000) (negligent/wanton hiring); *Bruck v. Jim Walter Corp.*, 470 So.2d 1141, 1144 (Ala.1985) (negligent/wanton entrustment).

Wright contends that both McKenzie and Peacock Timber were negligent and/or wanton in entrusting a vehicle to Conner, and that both McKenzie and Peacock Timber were negligent and/or wanton in their decisions to hire Conner, their failure to train Conner, and in their supervision of Conner.

The torts at issue have common elements. Namely, to prove a claim under Alabama law for any of Wright's Count IV claims, a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent. *See Southland Bank,* 2008 WL 5195187 at *16-18 (negligent training); *Armstrong Bus. Servs.*, 817 So.2d at 682 (negligent/wanton supervision); *Bruck*, 470 So.2d at 1144 (negligent/wanton entrustment); *Sanders v. Shoe Show, Inc.*, 778 So.2d 820, 824 (Ala. Civ. App. 2000) (negligent/wanton hiring).

Peacock Timber and McKenzie contend that there is no evidence that Conner was an incompetent driver. Peacock Timber also contends that Wright has not shown that Peacock

Timber knew or should have known of Conner's alleged incompetence. In opposition, Wright presents evidence that Conner previously had his Arizona commercial driver's license suspended for bribing a state official. Wright also suggests that a more diligent inquiry into Conner's driving record would have revealed he had no prior experience or training in hauling logs.

Wright later supplemented her response to the Defendants' motions, asserting that Conner's prior traffic citations, including two speeding tickets, non-moving violations, and unknown "local offenses," and his criminal history are evidence of his incompetence as a driver. Wright further asserts that if Peacock Timber and McKenzie had diligently reviewed Conner's record they would have been aware of his incompetence. In support, Wright attaches the affidavit of Katheryn M. Grigsby.[2] Grigsby is the Director of Safety and Risk Management for Covan World-Wide Moving, Inc. ("Covan"), a company that declined to hire Conner in 2005. Grigsby states that the Federal Motor Carrier Safety Regulations require her employer, Covan, to investigate an applicant's criminal and driving history prior to hiring the applicant.[3] Grigsby states that she conducted the required investigations and discovered several items that disqualified Conner from employment with Covan under Covan's employment standards. Those

---

[2] The Defendants have moved to strike Grigsby's affidavit on the basis that it offers expert testimony and contains hearsay. This affidavit is problematic on both of those grounds. Also, the court by separate order has denied Wright's request to add Grigsby as a witness at trial, based on failure to disclose her as a witness before the deadline for doing so, with no good cause shown for the failure. However, the court has considered the contents of the affidavit and concludes that, because it does not change the court's determination of the motions for summary judgment, the Defendants' motions to strike are due to be denied as moot.

[3] Wright has not shown that those regulations would apply to companies operating in the timber transportation business, and, it appears to the court that those regulations do not apply in this case. *See* 49 U.S.C. § 13506(a)(6)(B) (exempting transportation of unmanufactured agricultural or horticultural commodities from coverage of the Motor Carrier Act).

items included the fact that at the time of the investigation Conner did not have a valid commercial driver's license, and that he had a felony conviction for theft of a credit card. Grigsby also states that Covan would have conducted further investigation into Conner's conviction for issuing a bad check, and into his traffic violations, and that depending on the results of further investigation, Covan might have refused to hire Conner on those grounds as well.

With respect to Peacock Timber's Motion for Summary Judgment, the court finds that Wright has failed to demonstrate that Peacock Timber knew or should have known about Conner's alleged incompetence. Wright has not provided any evidence that Peacock Timber was aware of the conduct listed above. Cathy McKenzie stated in her deposition that she did not inform Peacock of the bribery charges, or that Conner's commercial driver's license had ever been suspended. Conner also stated that no one at Peacock Timber was made aware of his history. Conner Dep. at p. 203. Grover Peacock stated that prior to turning the trailer over to Conner, he ran his insurance, and checked his driving record to ensure he held a current valid commercial driver's license. Wright has not offered any other means through which Peacock Timber may have known of Conner's history.

Neither has Wright demonstrated that Peacock Timber should have known of what she contends was Conner's incompetence. The fact that Covan, a company operating under a set of regulations not applicable to Peacock Timber, performed a more thorough background check is not evidence, even taken in the light most favorable to Wright, that Peacock Timber should have done the same investigation. Peacock Timber was not entering into a contract with Conner as an individual; rather, it was contracting with McKenzie Trucking, which had already hired Conner

as a driver. Further, the evidence shows that Peacock Timber conducted the necessary checks to insure that Conner held a valid commercial driver's license, and to verify that Conner was insured. The court finds no basis for a jury to reasonably conclude or infer that Peacock Timber's investigation was lacking, that it had any duty to conduct a further investigation, and that a proper investigation would have uncovered proof of Conner's incompetence as a driver. Therefore, the court finds that Wright has failed to demonstrate a sufficient basis for an essential element of her claims against Peacock Timber stated in Count IV, and Peacock is entitled to summary judgment on these claims.

Turning to McKenzie's motion, the court concludes that Wright has failed to present sufficient evidence from which a reasonable jury could find that Conner was an incompetent driver before the accident on which this case is based. In their Motion for Summary Judgment, Conner and McKenzie present evidence of Conner's competence. Specifically, they note that at the time of the accident Conner held a valid Alabama commercial driver's license, had never before had an accident, and had only two traffic citations for speeding.

"The essential ingredients of a cause of action for negligent entrustment are: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages." *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985). Under Alabama law, the heart of the competency issue is whether the Plaintiff's evidence bears on Conner's "ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car*, 921 So. 2d 404, 413-14 (Ala. 2005). With respect to Conner's criminal history, Wright has failed to demonstrate how it negatively bears on his ability to drive. Conner's previous convictions do not involve Conner's incompetence as a driver. Two of the convictions, one in 2001, and another in 2002, involve a

stolen credit card, and issuing bad checks, crimes that do not involve one's ability to drive. The most recent conviction relates to Conner's bribery of an Arizona state official to obtain a commercial driver's license. The court does not find, nor does Wright argue, that bribery is demonstrative of an inability to safely operate a vehicle.

Likewise, Wright has not demonstrated that Conner's past license suspension is indicative of his incompetence as a driver. Alabama courts have repeatedly held that suspensions are not per se indicative of incompetence, and that in order for the court to find incompetence on the basis of a suspended license, the suspension must have been more than administrative in nature. *See Halford*, 921 So. 2d at 413-14. The circumstances surrounding the suspension of Conner's commercial driver's license have not been made clear to the court, though it appears that the suspension was related to the bribery charges discussed above.[4] Wright has not indicated that the suspension was in anyway related to Conner's competence as a driver, and, to the contrary, Conner states in his deposition that prior to his being made aware that he did not hold a valid commercial driver's license, he believed that he held a valid license because he had taken and passed a skills test. Conner Dep. at p. 82.

All that remains are Conner's two speeding tickets,[5] which Alabama courts have

---

[4]The parties also reference a suspension for failure to properly file medical records that occurred around the same time as the bribery charges. Whether this represents an additional suspension, or was the basis for the original suspension, does not change the court's determination of this matter on summary judgment. Wright has not shown that either of these suspensions, if there are indeed two, weigh on Conner's competence as a driver, and were more than administrative in nature.

[5]As mentioned above, Wright also notes that Conner has several other citations, some of which are non-moving violations, and the others are "unspecified local violations." Wright has not explained how any of these citations bear on Conner's competence as a driver, and has even failed to describe the nature of the alleged citations. Conner states that he had two speeding

generally held to be insufficient to show a driver's incompetence. *See Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, (Ala. 1995) (holding two speeding tickets within three years of the accident at issue, plus a 10-year-old conviction for DUI, was not sufficient evidence of the driver's incompetence); *Thompson v. Harvard*, 235 So. 2d 853, 857 (Ala. 1970) ("proof of two moving violations or accidents within a two year period prior to the accident made the basis of the suit is probably insufficient [to create a fact issue of the driver's incompetence]"). Having not been given any reason to find the circumstances of Conner's two speeding tickets uniquely demonstrative of incompetence, the court finds the evidence presented by Wright to be insufficient to create a factual dispute regarding Conner's incompetence as a driver. Therefore, McKenzie and Conner's motion for summary judgment on Count IV is due to be granted.

**B.     Negligence/Wantonness of Conner (Count V)**

In Count V, Wright asserts claims for negligence and wantonness against Conner, and against McKenzie and Peacock Timber on the basis of respondeat superior. Peacock Timber has moved for summary judgment on this claim, contending that Wright has brought insufficient evidence to show an employer-employee, or agency, relationship between McKenzie and its driver, Conner, and Peacock Timber. McKenzie and Conner have moved for partial summary judgment on Count V, arguing that Wright has failed to produce evidence that Conner's actions were wanton.[6]  The court will discuss the grounds for the Defendants' motions for summary judgments on Count V in turn.

---

tickets prior to the accident, and without any more specific evidence, the court cannot conclude that Wright's allegations contradict Conner's deposition testimony.

[6]McKenzie and Conner do not contend that they are due summary judgment on the negligence claims made against Conner personally, and against McKenzie as Conner's employer.

10

1.  *Relationship Between Peacock Timber and McKenzie*

Peacock Timber contracted with McKenzie to pick up and haul Peacock's timber, loaded on Peacock Timber's trailer, and deliver it to International Paper. McKenzie agrees that Conner was her employee, and that she would be vicariously liable for any negligence of Conner. The issue, then, is whether there is sufficient evidence from which a reasonable jury could conclude that an agency, rather than an independent contractor, relationship existed between McKenzie and Peacock Timber, so that Peacock Timber could be held liable for the negligence of McKenzie's employee, Conner.

Peacock Timber contends that at the time of the accident, McKenzie was an independent contractor for, not an agent or employee of, Peacock Timber, and as a result, it cannot be liable for the acts of McKenzie's employee, Conner. In Alabama, the general rule is that "one is not ordinarily responsible for the negligent acts of his independent contractor." *Fike v. Peace*, 964 So. 2d 651, 654 (Ala. 2007) (quoting *Boroughs v. Joiner*, 337 So. 2d 340, 342 (Ala. 1974)).

Whether a relationship is an independent contractor relationship or an agency or employment relationship depends on whether the entity for whom work is performed controls, or has reserved the right to control, the means by which work is done. *Keebler v. Glenwood Woodyard, Inc.*, 628 So. 2d 566, 568 (Ala. 1993). Control is not established if the employer retains only the right to supervise the employee to determine if the employee performed in conformity with the contract. *Id.*

In support of its motion, Peacock Timber relies primarily on two cases in which the Alabama Supreme Court found drivers of timber loads to be independent contractors for the timber company, and not employees. *See Williams v. Tennessee River Pulp and Paper Co.*, 442

So. 2d 20 (Ala. 1983); *Lankford v. Gulf Lumber Co., Inc.*, 597 So. 2d 1340 (Ala. 1992).  The court finds the relationships discussed in the cases cited by Peacock Timber are distinguishable from the relationship between Peacock Timber and McKenzie.  The court further finds that these differences are sufficient, at this stage of the proceedings, to find a question of fact regarding McKenzie and Peacock Timber's agency relationship, weighing the evidence and inferences therefrom in favor of the Plaintiff/non-movant, as the court must do at this time.

     First, in *Williams*, the driver supplied all of his own equipment, a factor that the court acknowledged "supports the finding of independent contractor status." *Williams*, 442 So. 2d at 22.  Here, the trailer used by Conner to transport the timber was owned by Peacock Timber.  Wright has also suggested that Peacock Timber used its ownership of the trailers as a means of exercising and reserving a right of control over Conner.  Peacock Timber required that the trailers be returned from the delivery site following delivery of the load.  Though the timetable for returning the trailers is not made explicit in the deposition testimony referenced by Wright, it can be inferred from that testimony that Peacock Timber required that the trailers be returned, and that Peacock Timber reserved the right to require Conner, and other drivers, to drive to the delivery site and pick up trailers that the driver had not returned, even if the driver had not planned to work on that day.  From this it is possible to infer that, in this instance, Peacock Timber reserved a right to control Conner's time, a right Alabama courts have recognized as a key ingredient of an employment relationship. *Williams*, 442 So. 2d at 22.

     Further, here, unlike in *Williams* and *Lankford,* there is evidence to support the inference that Peacock Timber, specifically its President, Grover Peacock ("Peacock"), took an active role in the maintenance on both the trailers used by Conner, and McKenzie's Volvo truck driven by

Conner. Conner testified that on at least two occasions he contacted Peacock when he had problems, once with a tire on the trailer, and once when the Volvo truck was having engine problems. Peacock supported Conner's testimony, stating in deposition that he would encourage Conner, as well as the other drivers, to call him with serious problems, and otherwise to call Peacock Timber's shop. Peacock also stated in his deposition that he would sometimes take a look at the trucks, including those driven by the independent contractors, and would instruct them to have certain repairs made. Peacock Dep., pp. 101-02.

Finally, unlike in *Williams* and *Lankford*, Wright has provided some evidence that Peacock Timber attempted to control the route that Conner, and other drivers, took to deliver its loads. Taken in the light most favorable to Wright, and in light of other evidence, the method of calculating driver pay may be viewed as an attempt by Peacock Timber to discourage the drivers from straying from the company-chosen route. Paul Wilson, a Peacock Timber employee, provided some support for that view. At various points in his deposition he stated that the route he uses to calculate driver pay is the way drivers "have got to go," and that he tells the drivers the route to take. Wilson also made note of the fact that at the time of the accident, Conner was "off-route," perhaps indicating that drivers are generally expected to follow the route used to calculate the driver's pay. Cumulatively, the evidence may be viewed as supporting Wright's claim that Peacock Timber took steps to control the drivers' routes.

Alabama courts have repeatedly acknowledged that agency matters are fact intensive findings, and, have noted that it is rarely appropriate to decide such questions at the summary judgment stage. *See, e.g., Curry v. Welborn Transportation*, 678 So. 2d 158, 160 (Ala. Ct. Civ. App. 1996). Accordingly, although the case for agency is thin, the court finds that the evidence

13

before it at this time, weighed in favor of Wright, is sufficient to find that questions of fact remain, and that Peacock Timber's motion for summary judgment is due to be denied as to Count V.  This issue may be revisited at trial on appropriate motion.

    2.    *Wright's Wantonness Claim*

Alabama courts have defined wantonness as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Bozeman v. Central Bank of the South*, 646 So. 2d 601 (Ala. 1994).  While "it is not essential that the actor should have entertained a specific design or intent to injure the plaintiff," the actor must have been "conscious that injury will likely or probably result from his actions." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (citing *Joseph v. Staggs*, 519 So. 2d 952, 954 (Ala. 1988))

Wright has not provided any basis from which it could be inferred that Conner acted consciously in taking the actions that resulted in the accident, knowing that injury would likely or probably result from his actions.  In his deposition, Conner stated that he did not believe that in pulling into the right lane he was putting anyone in any danger, because he believed that the Freightliner driven by Fields was in the left lane.  Wright has not presented any evidence to contradict Conner's testimony.  Wright presented evidence that the Freightliner was not in the left lane at any point when it was within Conner's view, and that Conner, in pulling in front of the Freightliner, did not give Fields long enough to react and avoid the collision.  Wright also suggests that Conner was not truthful in estimating the Freightliner's distance from his vehicle when Conner moved from the median into the right lane.  Wright's evidence, even taken in the light move favorable to her, however, does not contradict Conner's claim that he did not believe

14

that the Freightliner was in the right lane, and therefore, was not conscious of the risk posed by pulling into the right lane. Therefore, summary judgment is due to be granted as to the wantonness claim contained in Count V as to all Defendants.[7]

## V. CONCLUSION

It is ORDERED as follows:

(1)  Peacock Timber's Motion to Strike Affidavit of Kathy Grigsby (Doc. #107), and McKenzie and Conner's Motion to Strike Affidavit of Katheryn M. Grigsby (Doc. #108) are DENIED as moot.

(2)  Peacock Timber's Motion for Summary Judgment (Doc. # 70) is GRANTED as to Count V's claim of wantonness, and all of the claims contained in Count IV, and DENIED as to Count V's claim for negligence.

(3)  Conner and McKenzie's Motion for Partial Summary Judgment (Doc. # 69) is GRANTED.

(4)  Accordingly, Count IV, and Count V's claim for wantonness are DISMISSED as to all Defendants.

(5)  The case will proceed to trial on Wright's Count V claim of negligence against all Defendants. The issues of liability to be determined at trial will be: (a) whether Conner was guilty of negligent driving which proximately caused the wreck, (b) if so, whether Deborah Ann Fields was contributorially negligent, and (c) if Conner

---

[7] The court grants this motion as to all defendants despite Peacock Timber having not moved for summary judgment on this basis. The court finds that because Conner is due summary judgment on this claim, there is no longer any basis to hold Peacock Timber liable as Conner's employer. Therefore, the wantonness claim contained in Count V is due to be dismissed as to all Defendants.

was negligent and Fields was not contributorially negligent, whether Conner was acting as the agent of Peacock Timber at the time of the wreck.

Done this 30th day of July, 2009.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE